**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

United States of America

v.

Case No. 1:24-cr-00265-TNM

Robert P. Burke, Yongchul "Charlie" Kim,
and Meghan Messenger,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF JOINT
MOTION TO STRIKE PREJUDICIAL SURPLUSAGE AND
EXCLUDE IRRELEVANT EVIDENCE BY DEFENDANTS
YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................. 1

The Allegations in Paragraph 45 ............................................................................................ 1

Legal Standard ........................................................................................................................ 2

Argument ................................................................................................................................. 4

I.      UNDER *MCDONNELL*, ONLY ATTEMPTS TO INFLUENCE OFFICIAL
ACTS VIOLATE 18 U.S.C. § 201. ................................................................................ 4

II.     THE COURT SHOULD STRIKE AS SURPLUSAGE THE ALLEGATIONS IN
PARAGRAPH 45 CONCERNING NON-OFFICIAL ACTS. ....................................... 7

III.    EVIDENCE AND ARGUMENT CONCERNING UNOFFICIAL ACTS
SHOULD BE EXCLUDED FROM TRIAL ................................................................. 9

Conclusion ............................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Dimora v. United States*,
973 F.3d 496 (6th Cir. 2020) ........................................................................7

*Dranow v. United States*,
307 F.2d 545 (8th Cir. 1962) ........................................................................3

*McDonnell v. United States*,
579 U.S. 550 (2016) .........................................................................1, 5, 6, 7, 8

*Old Chief v. United States*,
519 U.S. 172 (1997) ....................................................................................4, 9

*Skilling v. United States*,
561 U.S. 358 (2010) .......................................................................................6

*Snyder v. United States*,
603 U.S. 1 (2024) ...........................................................................................6

*United States v. Alfisi*,
308 F.3d 144 (2d Cir. 2002) ..........................................................................5

*United States v. Fattah*,
914 F.3d 112 (3d Cir. 2019) ..........................................................................7

*United States v. Gartmon*,
146 F.3d 1015 (D.C. Cir. 1998) ....................................................................9

*United States v. Jackson*,
371 F. Supp. 3d 257 (E.D. Va. 2019) ...........................................................7

*United States v. Jefferson*,
289 F. Supp. 3d 717 (E.D. Va. 2017) .........................................................7, 8

*United States v. Jordan*,
626 F.2d 928 (D.C. Cir. 1980) ......................................................................3

*United States v. Kemper*,
503 F.2d 327 (6th Cir. 1975) ........................................................................3

*United States v. McIntosh*,
23 F.3d 1454 (8th Cir. 1994) ........................................................................3

*United States v. Oseguera Gonzalez*,
   507 F. Supp. 3d 137 (D.D.C. 2020) .................................................................... 4

*United States v. Poindexter*,
   725 F. Supp. 13 (D.D.C. 1989) .............................................................................. 3

*United States v. Rezaq*,
   134 F.3d 1121 (D.C. Cir. 1998) ........................................................................ 2, 3

*United States v. Silver*,
   864 F.3d 102 (2d Cir. 2017) .................................................................................. 8

*United States v. Silver*,
   948 F.3d 538 (2d Cir. 2020) ............................................................................. 5, 6

*United States v. Singhal*,
   876 F. Supp. 2d 82 (D.D.C. 2012) .................................................................... 2, 3

*United States v. Skelos*,
   707 F. App'x 733 (2d Cir. 2017) .......................................................................... 7

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998) ........................................................................... 3

*United States v. Weinberger*,
   1992 WL 294877 (D.D.C. Sept. 29, 1992) .......................................................... 3

*United States v. Wells*,
   127 F.3d 739 (8th Cir. 1997) ................................................................................ 3

*United States v. Wilkins*,
   538 F. Supp. 3d 49 (D.D.C. 2021) ................................................................... 4, 9

## Rules / Statutes

18 U.S.C. § 201 ...........................................................................................................4, 5, 8

Fed. R. Criminal P. 7(d) .............................................................................................. 2, 3

Fed. R. Evid. 401 ............................................................................................................... 9

Fed. R. Evid.  403 ......................................................................................................... 4, 9

## Other Authorities

1 Andrew D. Leipold, *Federal Practice and Procedure* § 128 (5th ed.) ..................... 2, 3

Black's Law Dictionary 1581 (9th ed. 2009) ................................................................. 2

**Preliminary Statement**

The bribery indictment returned against Defendants Yongchul "Charlie" Kim and Meghan Messenger ("Movants") and co-Defendant Adm. Robert Burke alleges a straightforward quid pro quo: Movants allegedly promised Adm. Burke a job at their company, Next Jump ("Company A" in the indictment), after he retired from the Navy in exchange for Adm. Burke awarding a sole-source Navy contract to Next Jump before his retirement.  The indictment alleges that this contracting action was an "official act."  (ECF 1 ¶¶ 49, 51.)  But the indictment also alleges, in Paragraph 45, that Adm. Burke engaged in other conduct to benefit Movants that is *not* alleged to be, and legally cannot constitute, "official action" under *McDonnell v. United States*, 579 U.S. 550 (2016).  These allegations cannot support a finding of guilt in this case.  Indeed, Paragraph 45 is not even incorporated into Counts 2 and 3, which are the actual bribery charges against the Defendants, presumably because even the government recognizes that the non-official-act evidence is irrelevant to those charges.  In truth, the allegations are irrelevant to all charges and must be struck as surplusage.  The Court also should preclude the government from presenting any evidence regarding the allegations in Paragraph 45 because any such evidence is irrelevant or, even if marginally relevant, so unfairly prejudicial, confusing, and misleading as to warrant exclusion.

**The Allegations in Paragraph 45**

Paragraph 45 sets forth the following allegations, none of which is alleged in the indictment to constitute an official act:

> 45. BURKE remained in the Navy and promoted Company A to senior Navy officers–while suggesting another contract for Company A to train a larger portion of the Navy–without disclosing his prior employment offer from KIM and MESSENGER. For example:
>
> a. On March 12, 2022, BURKE emailed a Foreign Military Officer asking him/her to report back about the Foreign Military's efforts to contract with Company A because such information would advance

Company A's efforts to market Company A to a wider U.S. Navy audience.

b. On March 14, 2022, BURKE sent an email introducing KIM and MESSENGER to Person 4, a four-star Navy Admiral who oversaw training programs for Navy recruits' "pipeline schools." BURKE promoted Company A's training program to Person 4.

c. On March 28, 2022, BURKE forwarded an email to Person 4 that contained a proposal for Company A to provide training to the Foreign Military. BURKE commented that the Foreign Military's proposal had "sort of the same components I would see us using."

d. On May 25, 2022, BURKE emailed a Senior Foreign Military Official, stating, "I wanted to write you a short note on [Company A]–something I know the [Foreign Military] is exploring." BURKE promoted Company A's training, said that he had "put together a proposal for wider US Navy implementation," and added, "my team is standing by as your local US Navy team to help in any way as the [Foreign Military] considers a similar path."

The allegations in Paragraph 45 purportedly support the charges in Count 1 (conspiracy to commit bribery against all Defendants), Count 4 (acts affecting a personal financial interest against Burke), and Count 5 (concealment of material facts against Burke). Paragraph 45 is not incorporated into Counts 2 and 3 (bribery against Movants and Burke, respectively). (ECF 1 ¶¶ 45, 48-51, 52, 54.)

**Legal Standard**

Pursuant to Federal Rule of Criminal Procedure 7(d), a court may strike surplusage from an indictment upon a defendant's motion. Fed. R. Crim. P. 7(d); 1 Andrew D. Leipold, *Federal Practice and Procedure* § 128 (5th ed.), Westlaw (June 2024 Update). Surplusage constitutes "extraneous matter in a pleading," *United States v. Singhal*, 876 F. Supp. 2d 82, 102 (D.D.C. 2012) (quoting *Surplusage*, Black's Law Dictionary 1581 (9th ed. 2009)), or "allegations [that] are not relevant to the charge," *id.* (quoting *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998)). Rule 7(d) was enacted to "introduce[] a means of protecting the defendant against immaterial or

2

irrelevant allegations in an indictment . . . which may, however, be prejudicial." Fed. R. Crim. P. 7(d) advisory committee's note to 1944 adoption; *see also* Leipold § 128 ("The purpose of 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts."). In this Circuit, such motions are properly granted where the defendant demonstrates that the language in the indictment is both irrelevant and prejudicial. *Singhal*, 876 F. Supp. 2d at 102-03 (citing *Rezaq*, 134 F.3d at 1134) (striking language that would confuse the jury and lead it to believe that a broader scope of activity was illegal).

While "[t]he standard under Rule 7(d) has been strictly construed against striking surplusage," *Rezaq*, 134 F.3d at 1134 (quoting *United States v. Jordan*, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980)), this Court has discretion in ruling on a motion to strike surplusage, *id.*; *see also United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (striking certain language from indictment). "'Language that serves no purpose and encourages a jury to draw inferences that a defendant was involved in collateral activities irrelevant to the [indictment] may be stricken.'" *United States v. Trie*, 21 F. Supp. 2d 7, 20-21 (D.D.C. 1998) (quoting *United States v. Weinberger*, 1992 WL 294877, at *7 (D.D.C. Sept. 29, 1992)). Surplusage consists of prejudicial allegations in an indictment that are "not necessary to establish a violation of [the] statute" in issue. *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994). The superfluous allegations may be "disregarded" if the remaining allegations are sufficient to charge a crime. *United States v. Wells*, 127 F.3d 739, 743 (8th Cir. 1997). Thus, when an indictment contains "nonessential allegations" that may "prejudicially impress the jurors," a court should grant a motion to strike the surplusage. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1975); *see also Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962) (motion to strike surplusage is the proper remedy where "allegations of an indictment are unnecessary or prejudicial").

In addition to striking surplusage, a court may, under Federal Rule of Evidence 403, "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it prejudices a defendant's case for reasons other than its probative value, such as by creating an undue tendency to suggest decision on an improper basis." *United States v. Wilkins*, 538 F. Supp. 3d 49, 70 (D.D.C. 2021) (cleaned up). "The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 146-47 (D.D.C. 2020).

## Argument

The Court should strike as surplusage Paragraph 45, which alleges that Adm. Burke made introductions and promoted Next Jump to other U.S. Navy and foreign military officials (over whom Adm. Burke held no authority). The indictment does not allege that any of this conduct was an "official act"—unlike the contracting action at the heart of the alleged quid pro quo. Nor does any of the conduct alleged in Paragraph 45 constitute an official act under *McDonnell*. These allegations, and any supporting evidence, thus cannot support a conviction and should not be presented to the jury.

## I.    UNDER *MCDONNELL*, ONLY ATTEMPTS TO INFLUENCE OFFICIAL ACTS VIOLATE 18 U.S.C. § 201.

The Supreme Court has made clear that federal bribery laws do not criminalize actions other than those seeking to influence "official acts." In *McDonnell*, the government charged the governor of Virginia with bribery under 18 U.S.C. § 201 for receiving loans, gifts, and other benefits from a businessman in return for alleged official acts. 579 U.S. at 555. The government

charged that the official acts included "arranging meetings" for the businessman and "contacting other government officials" on his behalf. *Id.* McDonnell was convicted, but the Supreme Court reversed, unanimously holding that these actions did not amount to an "official act" for purposes of 18 U.S.C. § 201. Instead, the Court held that to be unlawful, an "official act" has to meet two criteria: (1) it must involve "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee"; and (2) the act must also "be something specific and focused that is 'pending' or 'may by law brought' before a public official." *Id.* at 574.

Under the first requirement, "[s]etting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about [a question or matter] or to gather information" are insufficient for criminal liability. *Id.* at 573. Likewise, "[s]imply expressing support for [a particular course of action] at a meeting, event, or call . . . does not qualify as a decision or action on the [question or matter], as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.'" *Id.*

Under the second requirement, to qualify as a "question" or "matter," the activity that the official seeks to influence must "involve a formal exercise of government power that is similar in nature to a lawsuit, administrative determination, or hearing" and "must also be something specific and focused." *Id.* at 571, 574. General or high-level goals are insufficient. *See id.* at 578; *see also, e.g.*, *United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002) ("[B]ribery involves the giving of value to procure a specific official action from a public official"). As the Second Circuit explained in *United States v. Silver*, 948 F.3d 538 (2d Cir. 2020), "at the time the bribe is made, the promised official act must relate to" a "focused, concrete and specific . . . question or matter."

5

*Id.* at 556-57.  While the Second Circuit does not require the defendant to agree to perform "a particular act of influence," the defendant "must do more than promise to take some or any official action beneficial to the payor as the opportunity to do so arises; she must promise to take official action on a particular question or matter as the opportunity to influence that same question or matter arises."  *Id.* at 552-53 (emphasis omitted).

These requirements rest in part on constitutional concerns.  *See McDonnell*, 579 U.S. at 574-77.  Without a clear definition of what conduct is covered by federal bribery laws, the threat of criminal prosecution would chill speech by state and local officials, who "might wonder whether they could respond to even the most commonplace requests for assistance," and "citizens with legitimate concerns might shrink from participating in democratic discourse."  *Id.* at 575.  To comport with due process, a bribery offense must be sufficiently definite so "that ordinary people can understand what conduct is prohibited" and prosecutors cannot engage in "arbitrary and discriminatory enforcement"—for example, by prosecuting high-profile political figures for common conduct.  *Id.* at 576 (quoting *Skilling v. United States*, 561 U.S. 358, 402-03 (2010)).  Reading federal bribery statutes broadly would disrupt our federal system by supplanting state and local policy judgments about what gifts officials may accept with a draconian federal criminal prohibition.  *See Snyder v. United States*, 603 U.S. 1, 13 (2024); *McDonnell*, 579 U.S. at 576.

Accordingly, it is simply not true that nearly anything a public official accepts—from a campaign contribution to lunch—counts as a quid; and nearly anything a public official does—from arranging a meeting to inviting a guest to an event—counts as a quo.  *See McDonnell*, 579 U.S. at 574-75.  Rather, the quo must "involve[] a formal exercise of government power that is similar in nature to a lawsuit, administrative determination, or hearing" and "must also be something specific and focused."  *Id.* at 571, 574.  Following *McDonnell*, courts have repeatedly

found that actions such as setting up a meeting, making introductions, and promoting constituent interests are not official acts. *United States v. Jackson*, 371 F. Supp. 3d 257, 269 (E.D. Va. 2019); *United States v. Jefferson*, 289 F. Supp. 3d 717, 737 (E.D. Va. 2017) ("merely setting up a meeting or making introductions . . .—without more—is not an 'official act'").[1]

## II.    THE COURT SHOULD STRIKE AS SURPLUSAGE THE ALLEGATIONS IN PARAGRAPH 45 CONCERNING NON-OFFICIAL ACTS.

The indictment charges Movants with bribery and conspiracy to commit bribery, alleging that the "official act" was "ordering a United States Government contract for Company A." (ECF 1 ¶¶ 49, 51.) The indictment nevertheless includes allegations unrelated to this contracting action. Paragraph 45 contains allegations that Adm. Burke "promoted Company A to senior Navy officers," sought information about contracts with Next Jump, and introduced Movants to Navy personnel. These are precisely the kind of non-official acts that cannot support a bribery conviction under *McDonnell* and should be stricken as surplusage. Indeed, Paragraph 45 is not even incorporated into Counts 2 and 3, which are the actual bribery charges against Movants and Adm. Burke, presumably because even the government recognizes that the non-official-act evidence is irrelevant to those bribery charges.

The Supreme Court specifically rejected the contention that "nearly anything a public official does—from arranging a meeting to inviting a guest to an event—counts as a *quo*."

---

[1] Indeed, appellate courts have found error on the grounds that the jury instructions overstated an official act. *See, e.g.*, *Dimora v. United States*, 973 F.3d 496, 502-04 (6th Cir. 2020) (holding that the jury instructions were overinclusive and could have captured simple meetings and phone calls as official acts); *United States v. Skelos*, 707 F. App'x 733, 736 (2d Cir. 2017) (rejecting instructions that official acts "include acts customarily performed by a public official with a particular position"); *United States v. Fattah*, 914 F.3d 112, 156 (3d Cir. 2019) (jury instructions did not capture the difference between "permissible attempts to express support" and "impermissible attempts to pressure" another official (quoting *McDonnell*, 579 U.S. at 573) (cleaned up)).

*McDonnell*, 579 U.S. at 575.  Indeed, the government argued that Governor McDonnell had committed official acts when he sought to "promote" certain products.  *Id.* at 563.  But the Court held that such activity "is not, standing alone, a 'decision or action' within the meaning of § 201(a)(3) . . . . [S]omething more is required: Section 201(a)(3) specifies that the public official must make a decision or take an action *on* that question or matter, or agree to do so."  *Id.* at 571-72.  The government does not allege any decision or action by Adm. Burke stemming from general promotion of Next Jump or Movants, placing the allegations in Paragraph 45 outside the ambit of Section 201.  Indeed, the indictment's allegations as to Adm. Burke's purported promotion of Next Jump post-date the January 2022 pilot contract.  (ECF 1 ¶¶ 41, 45.)  Further, the allegations in Paragraph 45 do not constitute impermissible "pressure" of government officials.  As the indictment states, Adm.  Burke introduced Movants to another "four-star Navy Admiral" and later forwarded an email to that admiral that contained Next Jump's training proposal for a foreign military.  (*Id.* ¶ 45(b), (c).)  The remainder of the allegations in Paragraph 45 involve Adm. Burke's statements to foreign military officials, over whom Adm. Burke had no authority.  *See Jefferson*, 289 F. Supp. 3d at 737 ("[T]he bribery statute does not criminalize pressuring foreign officials to perform official acts; the bribery statute defines a public official to include only officials of the U.S. government.").  Thus, the allegations in Paragraph 45 are irrelevant and confusing.  They should be struck as surplusage on that basis alone.

But the allegations should be struck for the additional reason that they are highly prejudicial because they would flood the jury with testimony and evidence about conduct that jurors may find to be unseemly, but that is not illegal.  Such irrelevant and inflammatory information has no place in this trial and must be excluded.  *See, e.g.*, *United States v. Silver*, 864 F.3d 102, 106, 123 (2d Cir. 2017) (finding that it was "probable" that the jury improperly concluded that an alleged

8

meeting was an official act where the district court's charge did not specifically instruct the jury that a meeting on its own is not official action).  Paragraph 45 must accordingly be struck as surplusage.

## III.   EVIDENCE AND ARGUMENT CONCERNING UNOFFICIAL ACTS SHOULD BE EXCLUDED FROM TRIAL.

For similar reasons, the Court should also exclude all evidence and argument about unofficial acts under Rules 401 and 403 because this material is irrelevant, and, even if it is marginally relevant, its probative value is far outweighed by the danger of unfair prejudice to the defendants, as well as the risk of confusing and misleading the jury.

As discussed, evidence of unofficial acts by Adm. Burke are irrelevant and should be excluded under Rule 401.  In addition, any limited relevance would be significantly outweighed by the risks of unfair prejudice and jury confusion.  If this evidence is presented to the jury, it will have "an undue tendency to suggest decision on an improper basis" that the Supreme Court has specifically forbidden.  *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting *Old Chief*, 519 U.S. at 180).  In particular, the evidence related to whether Adm. Burke promoted Movants or connected them with other U.S. Navy or foreign military officials "poses a heightened risk of unfair prejudice or confusion of the issues" because it will not be clear to the jury that this conduct was *not* illegal "and this lack of clarity could allow the jury to make improper and unnecessary inferences or simply generate confusion."  *United States v. Wilkins*, 538 F. Supp. 3d 49, 74 (D.D.C. 2021).  "Furthermore, this issue is utterly tangential to the core issues before the Court in this case"—whether Adm. Burke accepted employment with Movants in exchange for causing the Navy to issue a contract to Next Jump.  *Id.*  This evidence should therefore be excluded at trial.

**Conclusion**

For the foregoing reasons, Movants respectfully request that the Court grant their joint motion, strike Paragraph 45 from the indictment, and exclude related evidence and argument from the trial.


Respectfully submitted,

DATED November 25, 2024                  /s/ William A. Burck
                                        _____
                                        William A. Burck


Rocco F. D'Agostino (Bar No.        William A. Burck (DC Bar No. 979677)
NY0592)                             Avi Perry (DC Bar No. 90023480)
445 Hamilton Ave., Suite 605        Rachel G. Frank (DC Bar No. 1659649)
White Plains, NY 10601              QUINN EMANUEL URQUHART & SULLIVAN, LLP
Tel: (914) 682-1993                 1300 I Street NW, Suite 900
                                    Washington, D.C.  20005
*Counsel for Defendant Meghan*      Tel: (202) 538-8000
*Messenger*                         Fax: (202) 538-8100
                                    williamburck@quinnemanuel.com
                                    aviperry@quinnemanuel.com
                                    rachelfrank@quinnemanuel.com

                                    Christopher Clore (*pro hac vice*)
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                    51 Madison Ave, 22nd Floor
                                    New York, NY 10010
                                    Tel: (212) 849-7000
                                    Fax: (212) 849-8100
                                    christopherclore@quinnemanuel.com

                                    *Counsel for Defendant Yongchul "Charlie" Kim*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Memorandum of Law was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

  /s/ *William A. Burck*
William A. Burck (DC Bar No. 979677)

Dated: November 25, 2024