UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-　　　　　　　　　　　　　　Case No.: 1:24-cr-00265-TNM

ROBERT BURKE, et. al.
-------------------------------------------------X

**DEFENDANT ROBERT BURKE'S MOTION TO DISMISS INDICTMENT OR TO STRIKE PREJUDICIAL SURPLUSAGE AND EXCLUDE IRRELEVANT EVIDENCE OF NON-OFFICIAL ACTS**

    Defendant Robert Burke, by and through his undersigned counsel, respectfully moves this Court to dismiss the bribery count of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense. In the alternative, ADM Burke joins the severed co-defendants' motion to strike the surplusage and exclude irrelevant evidence of non-official acts (Docket #60). In support of this motion, ADM Burke states as follows:

**PRELIMINARY STATEMENT**

    The case at bar involves an allegation of bribery, in which Defendant Burke was allegedly offered a $500,000/year job in exchange for getting Company A a $350,000 contract with the Navy. Aside from the nonsensical math of offering a $500,000 job as a bribe to obtain a $350,000 contract, the allegations in the indictment demonstrate a fundamental lack of understanding of the Navy's contracting procedures. In this *quid pro quo*, the alleged official act is one that applicable laws and regulations make clear that Defendant Burke did not have the power to grant, and in fact did not grant. Rather, the contract went through all the proper procedures and legal reviews before getting approved by the contracting officer – not Admiral Burke.

    The indictment fails to establish that ADM Burke committed an "official act" as required under 18 U.S.C. § 201 and as interpreted by the Supreme Court in *McDonnell v. United States*,

1

579 U.S. 550 (2016). The bribery count should be dismissed because the alleged actions do not meet the statutory definition of an "official act." Every other charge in this indictment relies upon this faulty and legally infirm theory of the *quid pro quo* and it is consequentially fatal to all counts.

## STATEMENT OF FACTS

The following statement of facts is drawn from the indictment and the transcripts of testimony and is provided solely for the purpose of this motion. The defendant does not concede the truth of these allegations but presents them to demonstrate the insufficiency of the indictment under the applicable legal standards.

In the summer of 2016, Person 2 became aware of Company A during a presentation at their headquarters in New York. Following this, the N1 Office conducted a pilot program with Company A. By 2018, Person 2 joined N-1 as deputy and began her interactions with Company A. The pilot program with Company A, which kicked off in April 2019, ended by the summer of 2019 due to waning interest.

In November 2019, Kim and Messenger reached out to Burke to reestablish business with the Navy. By July 2020, Person 2 had assumed the role of executive director for U.S. Naval Forces Europe and Africa. In early 2021, Kim and Messenger continued to promote Company A's training program to Burke, culminating in a proposal for a $20 million contract in May 2021.

The indictment alleges that Burke directed subordinates to find funding for Company A and influenced the contract's execution timeline. It further claims that Burke concealed a promise of employment from Kim and Messenger, and that he steered a sole-source contract to Company A. However, the evidence, including Person 2's testimony, indicates that the contract approval process adhered to the statutory and regulatory requirements, with the contracting officer, not BURKE, awarding the contract.

**LEGAL STANDARD**

A motion to dismiss an indictment is evaluated under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which allows for dismissal if the indictment fails to state an offense. The court must accept the factual allegations in the indictment as true but must determine whether those facts, as alleged, constitute a criminal offense.

The Supreme Court in *McDonnell v. United States*, 579 U.S. 550 (2016), clarified that an "official act" requires a formal exercise of governmental power on a specific and focused question or matter. The act must involve a decision or action on a matter that is pending or may be brought before a public official.

**ARGUMENT**

**A. Bribery Count Should be Dismissed Because Admiral Burke Did Not and Could Not Approve the Company A Contract**

The contract approval process within the Department of the Navy is governed by a complex framework of regulations designed to ensure transparency, accountability, and compliance with federal procurement laws. This process is primarily guided by the Federal Acquisition Regulation (FAR), the Defense Federal Acquisition Regulation Supplement (DFARS), the Navy Marine Corps Acquisition Regulation Supplement (NMCARS), and the Navy Manual of the Judge Advocate General (JAGMAN). Each of these regulatory frameworks plays a critical role in delineating the responsibilities and limitations of individuals involved in the contracting process. The process is designed to ensure that **no single person, regardless of rank, makes decisions on contract approvals.**

The FAR serves as the primary regulation for all federal executive agencies in their acquisition of supplies and services. Under FAR 1.602-1, only contracting officers have the

authority to enter into, administer, or terminate contracts. This authority is not vested in military officers or other personnel without specific contracting officer designation. The DFARS supplements the FAR specifically for the Department of Defense. It provides additional guidance on acquisition procedures, including the requirement for competitive bidding and the necessity of obtaining approvals for deviations from standard procedures.

NMCARS further refines these regulations for the Navy and Marine Corps. It mandates internal controls, peer reviews, and legal oversight to ensure compliance with statutory requirements. NMCARS 5201.170 requires peer reviews for contracts valued at $50 million or more, while NMCARS 5201.602-2 mandates legal review by the Office of General Counsel. The Navy JAGMAN provides additional legal guidance, emphasizing the importance of adherence to established procedures and the consequences of non-compliance.

The contract approval process involves several key steps, each designed to ensure that contracts are awarded in a fair, transparent, and legally compliant manner. These steps include acquisition planning, sole-source justification, solicitation and proposal evaluation, peer reviews and business clearance, legal review, and contract award. Acquisition planning is the first step in the contract approval process. According to NMCARS 5207.102, acquisition planning involves identifying the need for a contract, defining the scope of work, and determining the appropriate contracting strategy. This stage requires input from various stakeholders, including program managers, legal advisors, and contracting officers.

In cases where a sole-source contract is pursued, as with the Company A contract, specific justifications must be documented. FAR Part 6.302 outlines the circumstances under which a sole-source contract may be justified, such as when only one source is available or in cases of unusual and compelling urgency. The contracting officer must prepare a Justification and Approval (J&A)

document, which is subject to review and approval by higher authorities. Once the acquisition plan is approved, the contracting officer issues a solicitation to potential contractors. The solicitation process is governed by FAR Part 15, which outlines the procedures for competitive and non-competitive procurements. Proposals are evaluated based on criteria established in the solicitation, and the contracting officer is responsible for ensuring that the evaluation process is fair and impartial.

For contracts valued at $50 million or more, NMCARS 5201.170 requires peer reviews to ensure compliance with legal and regulatory standards. These reviews involve a thorough examination of the contract terms, pricing, and compliance with statutory requirements. Business clearance is obtained once the peer review is complete, allowing the contracting officer to proceed with contract negotiations. Before a contract can be awarded, it must undergo a legal review by the Office of General Counsel, as mandated by NMCARS 5201.602-2. This review ensures that the contract complies with all applicable laws and regulations and that any potential legal issues are addressed. Once all reviews and approvals are complete, the contracting officer awards the contract. The award process is documented in the contract file, which includes all relevant documentation, such as the acquisition plan, solicitation, evaluation criteria, and legal reviews.

The indictment against ADM Burke alleges that he approved the Company A contract. However, the evidence, including the testimony of Person 2, demonstrates that the contract approval process was followed in accordance with the statutory and regulatory requirements outlined above. Person 2's testimony provides critical insights into the contract approval process for the Company A contract. According to her testimony, the following steps were taken: acquisition planning, sole-source justification, solicitation and proposal evaluation, peer reviews and business clearance, legal review, and contract award. The contract was pursued as a sole-

source due to Company A's unique capabilities. A Justification and Approval (J&A) document was prepared and reviewed by the appropriate authorities, in compliance with FAR Part 6.302. Although Company A was not a traditional defense contractor, they were subcontracted under an existing contract with Power Train, facilitated through the Office of Personnel Management (OPM). This arrangement was reviewed and approved by the contracting officer. The contract underwent peer reviews to ensure compliance with NMCARS requirements. Business clearance was obtained, allowing the contracting officer to proceed with negotiations. The contract was reviewed by the Office of General Counsel to ensure compliance with all applicable laws and regulations. Any potential legal issues were addressed before the contract was awarded. The contracting officer, not ADM Burke, awarded the contract. The award process was documented in the contract file, which included all relevant documentation and approvals.

ADM Burke's role in the Company A contract was limited to providing feedback and guidance based on his position. He **did not possess the authority to approve the contract**, as this authority is vested solely in the contracting officer. The regulatory safeguards in place, including peer reviews, legal reviews, and business clearance, further demonstrate that ADM Burke could not have unilaterally approved the contract.

The indictment's allegations regarding the approval of the Company A contract misstate the contracting process in several key areas. The indictment suggests improper influence in steering a sole-source contract. However, the process followed the required justification and approval procedures under FAR Part 6.302, demonstrating compliance with regulatory standards. The indictment attributes contract approval authority to ADM Burke, which he did not possess. The contracting officer, following established procedures, awarded the contract. The indictment describes a rushed contract execution, potentially misstating the typical timeline and procedural

6

requirements for government contracts. The evidence shows that the process adhered to necessary reviews and approvals.

**B. The Court Should Strike Allegations of Non-Official Acts**

Defendant Burke joins in the co-defendants' motion to strike prejudicial surplusage and exclude irrelevant evidence, specifically concerning allegations of non-official acts. The co-defendants' motion effectively argues that the indictment includes allegations that do not constitute "official acts" under *McDonnell v. United States*, 579 U.S. 550 (2016), and are therefore irrelevant and prejudicial.

In addition to the arguments presented by the co-defendants, ADM Burke asserts that the inclusion of these non-official acts in the indictment serves no legitimate prosecutorial purpose and only seeks to unfairly prejudice the jury. The allegations of promoting Company A, seeking information about contracts, and making introductions are not only insufficient under McDonnell but also fail to demonstrate any direct link to the alleged quid pro quo arrangement central to the bribery charges.

Furthermore, the indictment's reliance on these non-official acts risks conflating lawful advocacy and networking, which are routine and expected behaviors for individuals in ADM Burke's position, with criminal conduct. This conflation could mislead the jury into believing that standard professional interactions are inherently suspect, thereby undermining the fairness of the trial.

Moreover, the allegations in Paragraph 45, which are not incorporated into the bribery charges, should be struck as surplusage because they do not advance the government's case on the core elements of bribery or conspiracy. Instead, they introduce extraneous matters that could distract the jury from the actual legal issues at hand.

ADM Burke also emphasizes that the indictment fails to allege any specific decision or action taken by him that would qualify as an "official act" under the stringent criteria set forth in *McDonnell*. The absence of such allegations further supports the argument that the non-official acts are irrelevant and should be excluded from consideration.

In conclusion, the Court should strike these allegations to prevent undue prejudice and ensure that the trial remains focused on the legally relevant issues. By doing so, the Court will uphold the principles of due process and fair trial, which are fundamental to our justice system.

**C. The Conspiracy Count Should be Dismissed**

The indictment alleges that ADM Burke conspired to commit bribery by agreeing with Kim and Messenger to steer a sole-source contract to Company A in exchange for post-Navy employment. To establish a conspiracy to commit bribery, the government must prove an agreement between two or more persons to commit bribery, and that the defendant knowingly and voluntarily joined the conspiracy with the intent to further its illegal purpose. However, the indictment fails to allege specific facts demonstrating an agreement or intent to commit bribery. It relies on vague and conclusory statements without detailing the nature of the agreement or ADM Burke's role. Additionally, if the alleged acts do not meet the "official act" requirement under McDonnell, this could undermine the conspiracy charge. In *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), the Supreme Court emphasized the need for a clear link between a thing of value and a specific official act, which is lacking in the indictment. Similarly, in *Snyder v. United States*, 144 S.Ct. 1947 (2024), the Court recently held that "the dividing line between §201(b)'s bribery provision and §201(c)'s gratuities provision is that bribery requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act." *Id*. at 1955.

**C. The Acts Affecting a Personal Financial Interest Count Should be Dismissed**

The indictment charges Mr. Burke with violating 18 U.S.C. § 208(a), which prohibits federal employees from participating personally and substantially in any particular matter in which they, or any person whose interests are imputed to them, have a financial interest. The statute aims to prevent conflicts of interest by ensuring that federal employees do not act in matters where they have a personal financial stake.

However, for the same reason that the Bribery count must be dismissed, the indictment fails to establish that Mr. Burke's actions constituted a violation of this statute. Moreover, even if Burke had "an arrangement concerning prospective employment," the indictment does not demonstrate that he participated in any particular matter with a direct and predictable effect on his financial interests at the time of the alleged conduct.

To establish a violation of 18 U.S.C. § 208(a), the government must prove that Mr. Burke knowingly participated in a specific matter that had a direct and predictable effect on his financial interests. The indictment lacks specific allegations showing that Mr. Burke's actions had such an effect. A contract that was cancelled before Burke retired from the Navy and went to work at Company A would have no impact on his personal financial interest.

Moreover, the indictment does not adequately allege that Mr. Burke's involvement in the contracting process was personal and substantial. The evidence, including testimony from Person 2, indicates that the contract approval process adhered to statutory and regulatory requirements, with the contracting officer, not Mr. Burke, making the final decision. This further undermines the claim that Mr. Burke's actions violated 18 U.S.C. § 208(a).

In conclusion, the indictment's allegations regarding Acts Affecting a Personal Financial Interest are insufficient to support a conviction under 18 U.S.C. § 208(a). The lack of specific and

substantial participation in a matter affecting Mr. Burke's financial interests warrants dismissal of this charge.

**D. The Concealment of Material Facts Count Should be Dismissed**

The indictment charges Mr. Burke with Concealment of Material Facts in violation of 18 U.S.C. § 1001(a)(1). This statute makes it a crime to knowingly and willfully conceal or cover up a material fact in any matter within the jurisdiction of the executive, legislative, or judicial branch of the United States government.

To establish a violation of 18 U.S.C. § 1001(a)(1), the government must prove that Mr. Burke knowingly and willfully concealed a material fact, that the fact was within the jurisdiction of a federal agency, and that the concealment was done with the intent to mislead or deceive. The indictment, however, fails to provide sufficient detail to support these elements.

The allegations suggest that Mr. Burke concealed his potential future employment with Company A. However, the indictment does not specify how this alleged concealment was material to any particular matter within the jurisdiction of a federal agency. In *United States v. Gaudin*, 515 U.S. 506 (1995), the Supreme Court held that materiality is an essential element of the offense, which the indictment fails to establish. Materiality requires that the concealed fact have a natural tendency to influence, or be capable of influencing, the decision of the decision-making body to which it was addressed.

Furthermore, the indictment lacks specific allegations demonstrating that Mr. Burke's concealment was done with the requisite intent to mislead or deceive. The evidence, including

testimony from relevant witnesses, does not support the claim that Mr. Burke's actions were intended to affect any decision-making process within the Navy or any other federal agency.

In conclusion, the indictment's allegations regarding Concealment of Material Facts are insufficient to support a conviction under 18 U.S.C. § 1001(a)(1). The lack of specific allegations regarding materiality and intent to deceive warrants dismissal of this charge.

## CONCLUSION

For the reasons stated above, the indictment should be dismissed. The Bribery allegations involve an alleged *quid pro* quo where the alleged *quid* was something Burke did not have the power to even do. All of the other counts similarly fall away when analyzed under the applicable law. ADM Burke respectfully requests that this Court grant his motion to dismiss.

Respectfully submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Counsel for Admiral Burke*
260 Madison Ave., 17th Floor
New York, NY 10016