**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CRIMINAL NO. 24–265 (1) (TNM)** |
| **v.** | **:** | |
| | **:** | |
| **ROBERT P. BURKE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' OPPOSITION TO**
**DEFENDANT'S MOTION IN LIMINE**

The United States of America, by and through its undersigned counsel, files this opposition

to Defendant Robert P. Burke's Motion in Limine, ECF No. 73. Burke moves to exclude or limit

six categories of evidence, most of which he describes in sweeping and generic terms. As to these

categories, the Court should deny the requested relief as nonspecific and premature. But even

where Burke identifies evidence with more specificity, his arguments for exclusion ring hollow.

As to those categories, the Court should deny the motion because the evidence Burke seeks to

exclude is relevant to the charges and neither confusing nor prejudicial.

**BACKGROUND**

The grand jury returned a four-count Indictment against Burke. (*See* ECF No. 1). In Count

One, Burke is charged with conspiring to accept a bribe from co-defendants Charlie Kim and

Meghan Messenger, in exchange for using his position as a Navy Admiral to order a government

contract to "Company A," in violation of 18 U.S.C. § 371. (*See* ECF No. 1, ¶¶ 20-21, 23-24, 51).

The charged conspiracy ranged from September 2020 through October 2022.  (*See id*. at ¶ 20).

In Count Three, Burke is charged with substantive bribery for accepting future employment and

benefits in return for being influenced to perform an official act, in violation of 18 U.S.C.

§ 201(b)(2). In Count Four, Burke is charged with using his official position to perform acts to

benefit Company A, in which he held a personal financial interest, in violation of 18 U.S.C. § 208(a). In Count Five, Burke is charged in a scheme to make false statements to the Government by misrepresenting and omitting facts concerning his prior job discussions with Kim and Messenger.

## ARGUMENT

Burke asks the Court to exclude or limit six categories of evidence. The Government responds to each category in the order discussed in Burke's motion.

### I.    EXCLUSION OF EVIDENCE RELATED TO CO-DEFENDANTS' CONDUCT

In Ground One, Burke seeks to exclude evidence that "pertains solely" to acts or statements by co-defendants Kim and Messenger, claiming such evidence is irrelevant and will confuse the jury because his trial has been severed. (ECF. No. 73 at 2). The Court should reject Burke's claim.

Burke's claim is generic and conclusory. He does not identify any specific acts or statements by Kim or Messenger that should be excluded under Rule 401 and Rule 403 of the Federal Rules of Evidence. This places the Government in the untenable and unfair position of having to argue the admissibility of evidence at a high level. For this reason, the Court should deny Ground One as nonspecific and premature. The Court should instead rule on the admissibility of this type of evidence as it is introduced at trial. *See Herbert v. Architect of Capitol*, 920 F. Supp. 2d 33, 38 (D.D.C. 2013) ("in some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole") (citation omitted); *United States ex rel. Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 211, 219 (D.D.C. 2017) (reserving until trial the resolution of a motion to exclude swaths of evidence).

Further, Burke's sweeping request to preclude any evidence of Kim and Messenger's acts and statements would so constrain the Government's presentation as to make it all but impossible to prove the conspiracy charge against Burke. "Conspiracy requires an agreement – and in particular an agreement to do an unlawful act – between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "So, to convict a defendant of a conspiracy offense, 'the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy).'" *United States v. Thompson*, 275 F. Supp. 3d 107, 111 (D.D.C. 2017) (citing *Smith v. United States*, 568 U.S. 106, 110 (2013)). "[T]he fundamental characteristic of a conspiracy is a joint commitment" to accomplishing its unlawful object, no matter if the object is achieved. *See Thompson*, 275 F. Supp. 3d at 111 (citing *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)).

To prove an unlawful agreement, the Government must present evidence of the conspirators' state of mind, which is seldom memorialized, thus requiring the Government to rely on indirect evidence. *See United States v. Gates*, 807 F.2d 1075, 1080 (D.C. Cir. 1986); *accord United States v. Quinn*, 403 F. Supp. 2d 57, 66-67 (D.D.C. 2005) ("Direct evidence of knowledge is, of course, rarely available, but 'circumstantial proof of specific intent may suffice.'") (citation omitted). "Circumstantial evidence plays a substantial role in conspiracy trials because of its relevance in establishing conspiracies and the genuine inability to obtain direct evidence of the conspiratorial agreement." *Id.* (citations omitted). "As a general rule, circumstantial evidence is as pertinent as direct evidence to the establishment of guilt or innocence in a criminal case." *Id.*

3

(citations omitted). Not only is circumstantial evidence sufficient, but it "'also may be more certain, satisfying and persuasive than direct evidence.'" *Id.* (citation omitted).

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence, and "the fact" to be "of consequence to determining the action. Fed. R. Evid. 401; *see United States v. Rhine*, Crim. No. 21-687 (RC), 2023 U.S. Dist. LEXIS 27764, at \*8 (D.D.C. Feb. 17, 2023) (relevance is a "low bar"). Similarly, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases . . . [and] should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (internal quotation marks removed).

Applying these principles, at the appropriate juncture, the Court should admit evidence against Burke that proves the existence of a conspiracy or Burke's participation in it, even if the evidence relates to acts or statements by Kim or Messenger. *See Thompson*, 275 F. Supp. 3d at 111. At least three types of evidence would be admissible on this score. First, statements by Kim and Messenger that reflect their knowing participation in the conspiracy is relevant to prove the existence of a conspiracy. Second, proving the existence of a conspiracy implicitly requires the Government to establish motive; thus, even statements that do not mention Burke at all may still be admissible if they show that Kim and Messenger had a motive to conspire with Burke. Third, statements by Kim and Messenger that describe meetings with Burke during the conspiracy is circumstantial proof of what Burke knew, said, and intended, as perceived by his co-conspirators.

Burke cites *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988), to the Court to support his claim that evidence should be excluded that does not "directly pertain" to him. (ECF No. 73 at 2). But *Tarantino* supports the Government's argument here, not Burke's. In *Tarantino*,

the D.C. Circuit affirmed defendants' convictions for conspiracy, holding that "[a] single conspiracy is proven if the evidence establishes that *each* conspirator had the *specific intent* to further the common unlawful objective." 846 F.2d at 1392 (emphasis added). This supports the Government's argument that Kim and Messenger's acts and statements are admissible if they show that they specifically intended to participate in a conspiracy with Burke.

## II.    LIMITATION ON EVIDENCE OF ALLEGED CONSPIRACY

In Ground Two, Burke moves to preclude the Government from introducing evidence that is not "directly linked" to his actions and knowledge. (ECF No. 73 at 3). He contends that such evidence would be irrelevant and prejudicial if it "merely suggests association or acquaintance" with Kim and Messenger. *Id*. The Court should reject this argument for the same reasons discussed above, including that it ignores the admissibility of circumstantial evidence in a conspiracy case.

Moreover, evidence of the defendants' prior associations with one another – to include their role in Company A's 2018 pilot program with the Navy that preceded the bribe scheme – should be admitted at Burke's trial. This evidence is relevant to the defendants' knowledge, motive, and state of mind when the conspiracy formed. "In conspiracy prosecutions, the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed." *United States v. Appiah*, Crim. No. 19-361 (BAH), 2020 U.S. Dist. LEXIS 111901, at *23 (D.D.C. June 25, 2020). As the Court in *Appiah* further explained, "acts intrinsic to a conspiracy may include evidence of acts linking a defendant to other defendants, showing the nature of a conspiracy and the kind of organizational control a defendant exercised, and showing the defendants' intent to act in concert." *Id*. (quotation marks and punctuation removed).

Here, the Government does not seek to introduce evidence of other offenses, but merely evidence that contextualizes the charged conspiracy, so the Court should provide the Government with the same leeway normally afforded to the prosecution. For example, evidence that the 2018 pilot program ended in failure, without an enduring contract for Company A, shows Kim and Messenger's knowledge of the failure, the reasons for the failure, and explains why they approached Burke. Similarly, the first program's failure shows that Burke's efforts to give Company A a second contract to further a criminal conspiracy, and not due to a good faith belief in the value of the program.

Burke misplaces his reliance on *United States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996), in arguing that evidence in a conspiracy is only admissible if it directly links to the defendant. (ECF No. 73 at 3). In *Gatling*, the D.C. Circuit affirmed the sufficiency of the evidence to convict a defendant in a conspiracy. *See* 96 F.3d at 1518-19. Notably, the Court held – as the Government has argued here – that proof of a defendant's knowing participation in a conspiracy can "be inferred from circumstantial evidence." *Id*. at 1518 (citations omitted). Among the evidence that showed Gatling's knowing participation were statements made by his co-conspirators implicating him in the conspiracy. *See id*. at 1518-19. This is precisely the sort of evidence the Government asks the Court to admit at Burke's trial.

## III.    EXCLUSION OF SPECULATIVE TESTIMONY REGARDING INTENT

In Ground Three, Burke moves to preclude witnesses from testifying on matters about which they lack personal knowledge. (ECF No. 73 at 3). Specifically, Burke contends that a witness without personal knowledge of Burke's intent or state of mind should not be permitted to testify about those issues. *Id*.

The Government is unaware of what specific testimony or evidence Burke seeks to proscribe here. As discussed above, however, circumstantial evidence is generally admissible in a conspiracy case, particularly to prove the conspirators' state of mind. *See*, *e.g.*, *Gates*, 807 F.2d at 1080. For example, Kim or Messenger's perceptions and beliefs relating to Burke's state of mind – if formed during their conspiracy with him and based on their interactions with him – would be based on their personal knowledge and, thus, relevant to prove Burke's intent and state of mind.

This observation is not in conflict with *United States v. Williams*, 827 F.3d 1134 (D.C. Cir. 2016), which is clearly not on point but cited by Burke in seeking to exclude speculative testimony. (*See* ECF No. 73 at 3). In *Williams*, the Court overturned the conviction of a defendant in a drug case, holding that the trial court erred in permitting the case agent to offer lay opinion testimony interpreting coded wiretap conversations obtained in the investigation. *See* 827 F.3d at 1155-59. Those are not our facts. Here, the Government does not intend to introduce agent testimony to opine on what was in Burke's mind in the relevant period. And nothing in *Williams* rejects the Government's argument that one conspirator's statements about his or her understanding of a co-conspirator's belief or intent may be admissible, if shown to be relevant and with a proper foundation.

To the extent Burke seeks to limit other witness testimony, the Government agrees with the defendant that the Federal Rules of Evidence, including Rule 602, applies at Burke's trial.

## IV.    RESTRICTION ON USE OF CHARACTER EVIDENCE

In Ground Four, Burke argues that the Government should be precluded from offering character evidence for the purpose of showing action in conformity therewith. (ECF No. 73 at 3). Burke does not identify what evidence he contends is character/propensity evidence. *See id*.

The Government agrees that the Federal Rules of Evidence, including Rule 404(a), applies at Burke's trial.

## V.    EXCLUSION OF NON-OFFICIAL ACTS (PARAGRAPH 45)

In Ground Five, Burke moves to preclude the Government from introducing any evidence relating to paragraph 45 of the Indictment, which describes acts by Burke to promote Company A to senior naval officials after he ordered the contract. (*See* ECF Nos. 1 at ¶ 45; 73 at 3). Burke claims this evidence is irrelevant to the conspiracy and bribe counts and is prejudicial "by suggesting improper character references." (ECF No. 73 at 4). These claims fail.

The Government intends to prove that the conduct in paragraph 45 furthered of one of the three objectives of the conspiracy. These objectives were discussed by Burke, Kim, and Messenger at a meeting in Washington, D.C., on July 23, 2021, and they were later memorialized by Kim and Messenger on several occasions. For example, on July 27, 2021, Kim wrote an email describing: *first*, a "single digit millions contract" under Burke's command in Navy Europe and Africa; *second*, an "upgrade to All-Navy contract," with Burke using the first contract as leverage to procure the larger deal "[l]ikely to be in the triple digit millions"; and *third*, "Burke would join [Company A] as a full-time employee in our NYC office." Phase One occurred in December 2021 and January 2022, when Burke ordered his subordinates to provide a workforce training contract to Company A (ultimately valued at approximately $350,000). Phase Two, Burke's efforts to procure a larger contract for Company A, occurred in March and May 2022. Specifically, Burke sent four communications to senior officials in the U.S. Navy and a Foreign Military to promote Company A for more workforce training contracts. (*See* ECF No. 1 at ¶ 45). And Phase Three occurred in October 2022, when Burke began working for Company A at a $500,000 annual salary, plus stock options and other benefits.

Against this backdrop, there are many reasons why the Court should not suppress evidence relating to paragraph 45. First, evidence that Burke affirmatively tried to procure a larger contract for Company A shows he understood this was the second objective of the conspiracy, and that it was a precursor to the third objective, his employment. What's more, Burke's conduct in March and May 2022 is compelling evidence that when Burke ordered the first contract months before, he did so with corrupt intention and as a knowing participant in the conspiracy. *See United States v. Khanu*, 664 F. Supp. 80, 83 (D.D.C. 2009) ("[W]here the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence." (citing *United States v. Badru*, 97 F.3d 1471, 1475 (D.C. Cir. 1996))).

Second, the conduct described in paragraph 45 is relevant because it responds to Burke's stated defense. Previewing his likely trial defense, Burke has stated that it was "nonsensical" that a bribe scheme existed here because no one would offer a bribe worth more than the bribed for contract. (*See* ECF No. 73 at 1). This argument completely ignores the second object of the conspiracy. To respond to this defense, the Government should be permitted to introduce evidence that shows the conspirators' goal was to use the first contract as a door opener to obtain another "triple digit millions" contract for Company A.

Third, Burke ignores that the conduct in paragraph 45 is relevant to Count Four because it shows Burke committed acts as a government official that affected his personal financial interests, in violation of 18 U.S.C. 208(a). To carry its burden of proof for Count Four, the Government must prove that Burke participated personally and substantially in a particular matter as a government official – the matter may include a contract – knowing that he had a financial stake in the outcome. *See* 18 U.S.C. 208(a). The statute specifically identifies a "recommendation" and "the rendering

of advice" as participation by the official that qualifies as a conflict of interest. And this is exactly the type of conduct described in paragraph 45.

Fourth, Burke does not (and cannot) identify anything about the evidence that raises a character/propensity concern. As shown above, the Government has articulated relevant and non-character purposes for seeking to introduce the conduct described in paragraph 45.

Burke solely relies on *United States v. Long*, 328 F.3d 655 (D.C. Cir. 2003), to argue that the Court should exclude "non-official acts" that do not have a "direct bearing" on the charges. (ECF No. 73 at 4). *Long* is inapposite here. In *Long*, the D.C. Circuit affirmed the defendant's conviction for child sex trafficking and possession of child pornography, and the gravamen of the opinion addressed the trial court's admission of prior similar bad acts under Rule 404(b). *See* 328 F.3d at 658-59, 672. Among other observations in the thoroughly reasoned opinion, the D.C. Circuit stated the unremarkable proposition that Rule 404(b) evidence must be closely related to the charged offense. *See*, *e.g.*, *id*. at 660-61.

To the extent Burke is arguing that the conduct in paragraph 45 is Rule 404(b) evidence, he is wrong, as discussed above. And *Long* provides no force for that argument. *Long* is clearly not a bribery case, and nowhere does it discuss excluding "non-official acts" in a bribery case, as Burke suggests. (*See* ECF No. 73 at 4).

## VI.     404(b) EVIDENCE AND LACK OF NOTICE

Paradoxically, Burke acknowledges that the Government provided notice of its intent to introduce evidence under Rule 404(b) concerning Burke's attempt to have Person 3 conceal evidence of their relationship from the Navy, while at the same time claiming that the Government "failed to provide the required notice." (ECF No. 73 at 4; *see also* ECF No. 68 (Government's 404(b) notice)).

Burke does not allege that the Government's 404(b) notice was untimely, nor does he identify any deficiency with the sufficiency of the notice. *See*, *e.g.*, Fed. R. Evid. 404(b)(3) (discussing notice requirements). Accordingly, the Government construes Burke's motion as stating the obvious: the Government has not noticed any other crimes, wrongs, or bad acts under Rule 404(b).

## CONCLUSION

As shown above, the Court should deny or defer rulings on Burke's Motion in Limine.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>MATTHEW M. GRAVES<br>UNITED STATES ATTORNEY<br>D.C. Bar No. 481052</td><td>COREY R. AMUNDSON<br>Chief, Public Integrity Section<br>U.S. Department of Justice</td></tr>
<tr><td>By      /s/<br>Rebecca G. Ross<br>Assistant United States Attorney<br>601 D Street N.W.<br>Washington, DC 20530<br>Office: (202) 252-4490</td><td>      /s/<br>Trevor Wilmot<br>Kathryn E. Fifield<br>Trial Attorneys<br>1301 New York Ave. NW<br>Washington, D.C. 20530<br>Office: (202) 514-1412</td></tr>
</table>

**CERTIFICATE OF SERVICE**

Undersigned counsel served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated:    December 20, 2024.

/S/ TREVOR WILMOT
*Trial Attorney*
*U.S. Department of Justice*