UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 24–265 (TNM) |
| v. : | |
| : | |
| ROBERT P. BURKE, : | |
| : | |
| YONGCHUL "CHARLIE" KIM, and : | |
| : | |
| MEGHAN MESSENGER, : | |
| : | |
| Defendants. : | |

**UNITED STATES' CONSOLIDATED REPLY IN SUPPORT OF ITS
MOTION TO ADMIT OUT-OF-COURT STATEMENTS BY CO-CONSPIRATORS**

In its Motion to Admit Out-Of-Court Statements by Co-Conspirators, ECF No. 69, the Government moved to admit certain statements in the trial of Defendant Robert P. Burke under Federal Rule of Evidence 901(d)(2)(E) because they are co-conspirator statements under the rule—meaning that a preponderance of the evidence shows the Burke and co-Defendants Yongchul "Charlie" Kim and Meghan Messenger were members of a conspiracy when the statements were made, and Kim and Messenger made the statements to help achieve the conspiracy's goals. In his opposition, ECF No. 89, Burke ignores the Government's extensive evidence of the charged conspiracy and attempts to turn Federal Rule 901(d)(2)(E) on its head, wrongly suggesting that his co-conspirators' statements are inadmissible because they do not prove—in and of themselves—Burke's corrupt agreement with Kim and Messenger. Next, contrary to the standard practice in this District, Burke requests that the Court hold an evidentiary hearing to determine if the Government has met its burden under Federal Rule of Evidence 801(d)(2)(E). *Id.* at 7-8. For reasons previously briefed, *see* ECF No. 65, and discussed in additional detail below, this Court should conditionally grant the Government's Motion and deny Burke's request for a hearing.

1

Although the Government's Motion was filed regarding Burke's trial, Kim and Messenger also filed an opposition to the Government's Motion. ECF No. 92. Kim and Messenger lack standing to preclude evidence at Burke's trial and their opposition misconstrues the evidence and appropriate legal standards. The Court should not consider their opposition.

## DISCUSSION

### I. The Government Has Proved by a Preponderance of the Evidence that Burke, Kim, and Messenger Were Members of a Conspiracy

In the face of the Government's strong evidence of a conspiracy, Burke claims that the Government has failed to prove by a preponderance of the evidence that a conspiracy existed. He is wrong. And in so arguing, Burke misconstrues the evidence, draws misleading inferences, and relies on a faulty reading of established legal precedent. ECF. No. 89 at 3.

#### a. The Proffered Statements and Evidence Proves Beyond a Preponderance of the Evidence that a Conspiracy Existed

Burke cites to disparate pieces of evidence to suggest that there was no conspiracy. In making these arguments, he ignores the overwhelming evidence that belies his interpretation. For example, Burke cites to a May 13, 2022, email, in which he wrote to Kim and Messenger, "I have all my ducks in a row now with Navy to have discussions with you on employment." ECF No. 89 at 2. Burke suggests that this demonstrates his adherence to legal and ethical standards and contradicts "any notion of his involvement in a conspiracy." *Id.* But this conclusory assertion neglects the many other times the proffered statements and evidence indicate Burke clearly did not adhere to legal and ethical standards so that he could carry out his part of the corrupt agreement with his co-conspirators. For example, Burke neglects to mention that he began discussing employment with Company A well before May 2022, ECF No. 1 at ¶¶ 31, 35, and despite having to report that to the Navy, *id.* at ¶ 4, he never did so, ECF No. 1 at ¶¶ 46, 53, 55. Burke also fails

2

to address the fact that when ordering Person 2 to provide a contract to Company A on December 17, 2021, *id*. at 38, he did not disclose that he had received a job offer from Company A, *id.* at ¶ 53. In light of the overwhelming evidence indicating that Burke purposefully disregarded his legal and ethical duties, *see* ECF No. 69 at 2-12; *see also* ECF No. 1, the May 13, 2022, email is not exculpatory evidence; rather, it is evidence of Burke's attempts to cover up the conspiracy and his criminal conduct, which only further emphasizes Burke's criminal intent.

> b. **The Indictment Alleges an Official Act that Proves Beyond a Preponderance of the Evidence that Burke was Part of a Conspiracy**

Burke also recycles his faulty argument that the Indictment fails to allege an "official action" as required under *McDonnell v. United States*, 579 U.S. 550 (2016). ECF No. 89 at 3; *see also* ECF No. 71 (Burke's Mot. to Dismiss, at 3-7). This time, Burke argues that this failure "undermines the Government's claim of a conspiracy[.]" ECF No. 89 at 3. As the Government has already briefed, the Indictment provides more than enough detail to establish that that Burke agreed to perform an official action at the time of the *quid pro quo*. *See* ECF No. 81 at 4-6. And as to the Government's Motion to Admit Out-Of-Court Statements by Co-Conspirators, the overt actions detailed in the Indictment prove beyond a preponderance of the evidence that Burke was a member of the alleged conspiracy. For example, the facts that, as alleged, "[o]n December 17, 2021, Burke ordered Person 2 to provide a contract to Company A, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000[,]" ECF No. 1, at ¶ 38; then promoted Company A to foreign military officials and other high ranking Navy officials, *id.* at 45; and then left to join Company A, are all additional evidence of the conspiracy being carried out exactly as the co-conspirators discussed. *See United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) ("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of

3

circumstances."). Contrary to Burke's conclusory and unsupported assertion, the sufficiently alleged overt acts provide additional evidence that he, Kim, and Messenger were willing participants in a conspiracy to commit bribery.

## II. Kim's and Messenger's Statements Were Made During and in Furtherance of the Conspiracy

Burke argues that Kim and Messenger's statements to each other, and to Company A investors and employees, did not further the bribe conspiracy because the statements did not implicate Burke as a conspirator and reflected Kim and Messenger's then-existing state of mind. *See* ECF No. 89 at 4-7. Burke's arguments are fatally flawed for two important reasons: first, a statement need not be clandestine or criminally inculpatory on its face to be made in furtherance of a conspiracy; and second, the context in which the statements were made shows that they were made with the intention of facilitating the achievement of the objects of the conspiracy.

### a. The Standard to Determine "In Furtherance of" is Much Broader Than Burke Argues.

Contrary to Burke's argument, nothing in Rule 801(d)(2)(E) requires that the statement implicate the defendant against whom it is offered. *Cf.* ECF No. 89 at 4-7. Instead, it is well-settled that a statement can further the conspiracy even if one member is unaware of it, provided another member made the statement to achieve the conspiracy's goals. *See United States v. Weisz*, 718 F.3d 413, 433 (D.C. Cir. 1983) (Rule 801(d)(2)(E) "embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are . . . admissible against the others, if made in furtherance of the common goal."); *United States v. Wright*, 285 F. Supp. 3d 443, 454 (D. Mass. Jan. 22, 2018) ("Knowledge of . . . every detail of the conspiracy is not a prerequisite to coconspirator statement admissibility." (citing *United States v. Cruz-Rodriguez*, 541 F.3d 19, 28 (1st Cir. 2008) (a conspiracy can be proven without showing that "each conspirator knew of all the details of the conspiracy or participated in

4

every act in furtherance of it . . .")))); Conspiracy: Basic Instruction, 1 Barbara E. Bergman, Criminal Jury Instructions for the District of Columbia § 7.102 (Matthew Bender, Rev. Ed.) ("When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators.").

Nor is it disqualifying under Rule 801(d)(2)(E) that a statement is reflective of a co-conspirator's state of mind, *cf.* ECF No. 89 at 4-7, such as the April 20, 2021, "felt slimy" email and the October 5, 2022, "no contract no job" text message, since that state of mind may color the co-conspirator's intention behind making the statement. *See United States v. Quinn*, 403 F. Supp. 2d 57, 66-67 (D.D.C. 2005) ("Circumstantial evidence plays a substantial role in conspiracy trials because of its relevance in establishing conspiracies and the genuine inability to obtain direct evidence of the conspiratorial agreement."); *United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) ("The declarant's intent is the relevant inquiry" under Rule 801(d)(2)(E)). The intention behind the statement also shows why Rule 801(d)(2)(E) "does not require that the statement be made to a co-conspirator." *Edmond*, 52 F.3d at 1111 (D.C. Cir. 1995); *cf.* ECF Nos. 69 at 24-25 (arguing that because the statements were made to non-conspirators, that is proof that the statements did not further a conspiracy).

Accordingly, as the Government stated in its opening brief, courts have recognized that statements can satisfy the "in furtherance of" requirement as long as they are designed to achieve the conspirators' goals in some way—to include statements of encouragement, statements concerning past events, or statements to non-conspirators. *See* ECF No. 65 at 10-11, 13-18. Indeed, a broad view of "in furtherance of" makes sense because conspiracies need not employ exclusively

clandestine or unlawful measures. *See United States v. Brockenborrugh*, 575 F.3d 726, 735-36 (D.C. Cir. 2009) (admitting evidence under Rule 801(d)(2)(E) "is not contingent upon the finding of an unlawful combination. Rather . . . [the rule] allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise."); *United States v. Gewin*, 471 F.3d 197, 202 (D.C. Cir. 2006) ("Rule 801(d)(2)(E) is based on principles of agency and partnership law, . . . the use of the term 'conspiracy' does not limit the doctrine to unlawful combinations, and that the doctrine applies equally in civil and criminal cases."); *Weisz*, 718 F.3d at 433.

Faithful application of these principles reveals that Burke's arguments are faulty. He ignores that if Kim and Messenger intended their statements to promote the conspiracy, it does not matter whether they implicated or involved him. *Compare* ECF No. 89 at 4-7 *with Edmond*, 52 F.3d at 1111 *and Brockenborrugh*, 575 F.3d at 735-36. For example, Burke cites to a September 14, 2021, email from Messenger to Company A employees, in which she explained the lesser-than-expected value of Company A's contract with the Navy, stating, "We don't want Bob [Burke] to get off the hook . . ." ECF No. 89 at 5. Burke tries to argue that this email simply outlines plans by Kim and Messenger and does not involve him. *Id.* But Burke neglects that Messenger goes on to reassure the employees, explaining, "IN our POV the contract size is less important than the things it triggers (including being able to say we're in partnership with the navy)." The statements in this email are made in furtherance of the conspiracy because Messenger is endorsing Burke's value to Company A to ensure they have no issues fulfilling their end of the corrupt agreement when it comes time to extend Burke's employment offer. Just as Kim and Messenger had no reason to care how Burke managed to deliver the initial contract for Company A, neither would Burke care what Kim and Messenger needed to do to ensure they hired him in the end. But this does not

mean their respective actions were not "in concert toward a common goal[.]" *See Weisz*, 718 F.3d at 433.

### b. The Context Behind the Statements Show They Were Designed to Achieve the Object of the Conspiracy.

While Burke asserts that certain statements did not further the conspiracy, he mischaracterizes the context of those statements. *See* ECF Nos. 89 at 3-6, 92 at 23-26. But the evidence shows that before and during the conspiracy Kim and Messenger needed to obtain a large-scale engagement from the Navy. The evidence includes:

- Records showing Company A's leadership training business segment earned zero revenue after the Navy terminated the pilot program in 2018.

- A July 3, 2020, Company A email showing its other business segment was suffering in 2020 due to the COVID-19 pandemic.

- A December 10, 2020, email from a Company A investor to Kim and Messenger seeking a share redemption, which Kim refused, and other investor statements to agents that they had been seeking to cash out of Company A for years.

- A December 18, 2020, email suggesting Kim and Messenger had snowed their investors by suggesting they were in a "contracting actions" phase with the Navy in late 2020, when they knew the Navy had canceled the pilot program.

- An October 11, 2021, email from a Company A employee in which the employee informed Kim and Messenger that a financial report circulated to investors misreported shareholder equity. The report stated it was "-9.5M but true number closer to -$16M[.]" The employee doubted anyone would notice but flagged it "as it is a big difference."

- A July 28, 2021, email from a Company A investor in which the investor complained that Kim and Messenger put "all your eggs in one basket with the Navy" and was tired

of watching the company "basically stagnate for 20 years," adding "it's past time to make a serious move."

- Recorded interview with Burke in which he said that Kim was under pressure from his board for a big Navy deal.

With this context, it becomes clear that Kim and Messenger's statements furthered the conspiracy within the meaning of Rule 801(d)(2)(E) and should be admitted. The statements were intended to foster mutual trust and cohesiveness with each other; apprise and encourage the Company A employees who were needed to do the work to prepare for and perform the training contract that Burke would obtain; and placate investors who wanted to cash out and were leery that efforts to do business with the Navy were worthwhile.

For example, Burke cites to an April 9, 2021, email from Kim to Company A investors, in which Kim told the investors that Burke asked if he could be an "Ambassador/Custodian" for Company A. ECF No. 89 at 7. Burke asserts that this email was a strategy by Kim and Messenger to inform investors of Burke's role but does not provide evidence of the Burke's participation in a conspiracy. *Id.* This argument misses the mark. Kim goes on in the email to explain to the investors how Burke's endorsement of Company A could be lucrative, and how Burke "could be a massive advocate." Here, it is clear that Kim is reassuring Company A investors that working with Burke would provide financial benefits, thereby reassuring them that their continuing investment in Company A would bear fruit. In other words, these statements were necessary to ensure that Kim and Messenger could carry out their end of the corrupt agreement that they had made with Burke. As such, they were made in furtherance of the conspiracy and should be admitted.

**III.     The Court Should Reject the Burke's Request for an Evidentiary Hearing**

The Court should deny Burke's request for an evidentiary hearing. ECF No. 89 at 7-8. First and foremost, courts in this District regularly admit co-conspirators' statements conditionally, subject to connection at the close of the Government's case. *See Jackson*, 627 F.2d at 1217-18; *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (holding that factual findings relevant to admissibility need not be made before the government presents evidence to the jury); *United States v. Brodie*, 326 F. Supp. 2d 83, 89-90 (D.D.C. 2004) (allowing the admission of co-conspirator statements at trial subject to proof of connection); *United States v. Cooper*, 91 F. Supp. 2d 60, 78 (D.D.C. 2000) ("If substantial evidence of the connection has not been produced at the close of the government's case the court will instruct the jury to disregard the hearsay statements."). Moreover, Federal Rule of Evidence 104(b) expressly provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." *Accord Brodie*, 326 F. Supp. 2d at 89 (citing Rule 104(b) in denying a defense motion for a pretrial hearing on the admissibility of co-conspirator statements).

Furthermore, the proffered co-conspirator statements easily meet the standards for admission set forth in Rule 801(d)(2)(E) and *Bourjaily v. United States*, 483 U.S. 171 (1987). As extensively set forth in the Government's Motion, the proffered statements will show that a conspiracy existed in which the Defendants worked together to commit bribery—Kim, Messenger, and Burke reached a corrupt agreement that Burke would use his position to secure a contract for Company A and help promote Company A to other high ranking officials in exchange for Kim and Messenger employing Burke at Company A with a lucrative salary and benefits. *See* ECF No. 69 at 2-12; *see also* ECF No. 1. As one example, in a November 16, 2021, email Kim told

9

Company A employees that he and Messenger met with Burke for "a little over 4 hours today" and that Company A was about to go "full force back into business with the Navy." In that email, Kim explained how Burke was "going to propose back a ~1MM engagement with [Company A] with the goal of having it signed before Xmas." Burke's assertion that this email is inadmissible because it does further the conspiracy does not withstand scrutiny. ECF No. 89 at 5.  Kim's statements provide direct evidence of the corrupt agreement by detailing Burke's plan to ensure that Company A obtained a contract with the Navy. They also show how Kim and Messenger were promoting Burke's value to Company A employees. The statements were made in furtherance of the conspiracy and demonstrate the Defendants' knowledge, intent, role, and participation in the conspiracy. Specifically, they illustrate how the Defendants reached their corrupt agreement and then worked to fulfill their obligations under that corrupt agreement.

This Court should provisionally admit the communications, consistent with common practice in this jurisdiction. *See United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988) (finding statements admissible if they can "reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a coconspirator or other person's usefulness to the conspiracy."); *United States v. Mosquera-Murillo*, 153 F. Supp 3d 130, 186 (D.D.C. 2015) (denying defendant's request for a hearing of admissibility of co-conspirator statements and provisionally admitting the statements contingent upon the Government showing at trial that the statements satisfy the provisions of Rule 801(d)(2)(E)).

**IV.     The Court Should Not Consider Kim and Messenger's Opposition, Which in Any Event is Unavailing**

Kim and Messenger requested and were granted a separate trial from Burke.  *See* ECF No. 27, 09/23/24 Minute Or.  Yet in the wake of their requested severance, Kim and Messenger now seek to insert themselves into briefing for Burke's trial. They should not be permitted to have it

both ways—and more to the point, they do not have standing to litigate the admissibility of statements at Burke's trial. *See United States v. Tyrrell*, 269 F. App'x 922, 929 (11th Cir. 2008) (defendant lacked standing to litigate on behalf of co-defendant in severed trial). The issues relevant as to Burke are not common to Kim and Messenger, as two examples illustrate. First, each statement that is the subject of the Government's motion was made by Kim and/or Messenger; as such, each is admissible at Kim and Messenger's trial as a statement of a party opponent. *See* Fed. R. Evid. 802(d)(2)(A). Second, the co-conspirator statements that are likely to be litigated ahead of Kim and Messenger's trial will be different than those at issue here. Rule 801(d)(2)(E) statements the Government would seek to introduce against Kim and Messenger would be Burke's statements in furtherance of the conspiracy, such as statements pressuring and ordering Navy subordinates to contract with Company A. The Government expects to litigate those statements during the separate briefing schedule that the Court imposed for Kim and Messenger's trial.

If the Court were to consider Kim and Messenger's opposition on the merits, however, their claims are based on mischaracterizations of the evidence. For example, Kim and Messenger argue that evidence that Burke supported Company A for years before the charged conduct means that his continued support was unconnected to any job offer. *See* ECF No. 92 at 5, 11. But they do not explain how Burke's prior support of Company A, and his support of Company A in 2021 and 2022 in exchange for a job offer with lucrative benefits, are mutually exclusive.

Kim and Messenger also claim that because they included others on emailed communications referencing the Navy, Burke, and his potential future employment at Company A, that they were not part of a conspiracy. *See* ECF No. 92 at 11-12. This argument does not withstand scrutiny. The emails Kim and Messenger sent to employees, investors, and family members purposefully withheld key information, and intentionally did not make any mention of Burke's job

11

offer being contingent on, or offered in exchange for, Burke securing a Navy contract for Company A and then promoting Company A. Kim and Messenger omitted these details precisely because they knew it was wrong—they provided just enough information to the employees, investors, and family members to assure them of the potential financial windfall coming their way (having not produced any revenue from their training business since the second quarter of 2019, ECF No. 1 at ¶ 19), while omitting the details that would have directly implicated them in criminal conduct. When reading these emails in context of the other proffered statements and evidence, *see* ECF No. 69 at 2-12; *see also* ECF No. 1, it is clear that Kim and Messenger's assertions about the exculpatory nature of these communications are misguided.

Finally, Kim and Messenger claim their statements were not made in furtherance of a conspiracy because they were "mere narrative of past successes of failures," and lacked a criminal objective because they were directed at investors and employees who were not co-conspirators. *See* ECF No. 69 at 23-26. The claim is fatally flawed for two important reasons: first, a statement need not be clandestine or criminally inculpatory on its face to be made in furtherance of a conspiracy; and second, the context in which the statements were made shows that they were made with the intention of facilitating the achievement of the objects of the conspiracy. Indeed, this argument conflicts with the legal authority that establishes the declarant's intention controls, not whether the recipient understood its criminal nature. *See Edmond*, 52 F.3d at 1111; *Brockenborrugh*, 575 F.3d at 735-36. Although Kim and Messenger cite to *United States v. Miller*, 738 F.3d 361 (D.C. Cir. 2013), to support their argument, *see* ECF No. 69 at 18, the case provides them no support. *See* ECF No. 69 at 18. *Miller* concerned statements that occurred after the charged conspiracy had ended and the co-conspirators had been arrested and charged. 738 F.3d at 374-75. Here, Kim and Messenger's statements occurred during the charged conspiracy and were made to

achieve objects of the conspiracy. *See* ECF No. 69 at 13-18. Thus, the statements here bear greater similarity to statements that "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy" and are admissible under Rule 801(d)(2)(E). *Tarantino*, 846 F.2d at 1412.

## CONCLUSION

For the foregoing reasons, this Court should grant the Government's Motion to Admit Out-Of-Court Statements by Co-Conspirators, ECF No. 69, and deny Burke's request for a hearing.

Respectfully submitted,

JOHN D. KELLER
Acting Chief, Public Integrity Section
U.S. Department of Justice

By:  /s/
Trevor Wilmot
Kathryn E. Fifield
Trial Attorneys
1301 New York Ave. NW
Washington, D.C. 20530
Office: (202) 514-1412


EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

/s/
Rebecca G. Ross
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490