# FINAL JURY INSTRUCTIONS

**Instruction 2.100 – FURNISHING THE JURY WITH A COPY OF THE INSTRUCTIONS**

I will provide you with a copy of my instructions.  During your deliberations, you may, if you want, refer to these instructions.  While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others.  If you have any questions about the instructions, you should feel free to send me a note.  Please return your instructions to me when your verdict is rendered.

**Instruction 2.101 – FUNCTION OF THE COURT**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case. It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

**Instruction 2.102 – FUNCTION OF THE JURY**

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

**Instruction 2.103 – JURY'S RECOLLECTION CONTROLS**

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.

**Instruction 2.105 – STATEMENTS OF COUNSEL**

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.  Similarly, the questions of the lawyers are not evidence.

**Instruction 2.106 – INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime.  You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of guilt or draw any inference of guilt from it.

**Instruction 2.107** – **BURDEN OF PROOF—PRESUMPTION OF INNOCENCE**

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require Admiral Burke to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of an offense with which Admiral Burke is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of an offense beyond a reasonable doubt, it is your duty to find Admiral Burke not guilty of that offense.

**Instruction 2.108 – REASONABLE DOUBT**

The government has the burden of proving a defendant guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable.  In criminal cases such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of Admiral Burke's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life.  However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason.  The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty.  Its burden is to prove guilt beyond a reasonable doubt.

**Instruction 2.109 – DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence.   When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.   On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example.  Assume a person looked out a window and saw that snow was falling.  If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen.   Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up.  His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact.  The law does not favor one form of evidence over another.  It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial.  You are permitted to give equal weight to both.  Circumstantial evidence does not require a greater degree of certainty than direct evidence.  In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

**Instruction 2.110 – NATURE OF CHARGES NOT TO BE CONSIDERED**

One of the questions you were asked when we were selecting this jury was whether the nature of the charge itself would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

**Instruction 2.111 – NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

**Instruction 2.112 – INADMISSIBLE AND STRICKEN EVIDENCE**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper.   You must not hold such objections against the lawyer who made them or the party she or he represents.  It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been.  If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations.

## Instruction 2.200 – CREDIBILITY OF WITNESSES

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have testified before you.

You are the sole judge of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified. You may consider anything that in your judgment affects the credibility of any witness.

For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any circumstances that would impair or improve the witness's ability to remember the event, the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience.  In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important o r  unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or supported by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

**Instruction 2.207 – LAW ENFORCEMENT OFFICER'S TESTIMONY**

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case.  In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

**Instruction 2.208 – RIGHT OF DEFENDANT NOT TO TESTIFY**

Every defendant in a criminal case has an absolute right not to testify. Admiral Burke has chosen to exercise this right. You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision. You must not assume the defendant is guilty because he chose not to testify.

**Instruction 2.210 – FALSE OR INCONSISTENT STATEMENT BY DEFENDANT**

You have heard evidence that Admiral Burke made statements in explanation of his actions that may have been false or inconsistent.  It is up to you to decide whether he made the statements, and whether they were, in fact, false or inconsistent.  If you find he did make such statements and that they were false or inconsistent, you may consider such evidence as tending to show his feelings of guilt, which you may, in turn, consider as tending to show actual guilt.  On the other hand, you may also consider that he may have given such statements for reasons unrelated to his case or consistent with his innocence.

If you find that Admiral Burke made a false or inconsistent statement in explanation of his actions, you should give the testimony as much weight as in your judgment it deserves.

**Instruction 2.305 – STATEMENTS OF THE DEFENDANT: SUBSTANTIVE
EVIDENCE**

You have heard evidence that Admiral Burke made statements to law enforcement about
the crime charged. You should consider all the circumstances, including whether law
enforcement recorded the statement, in deciding whether he made the statement. If you find that
he did make the statement, you must decide how much weight to give the statement. For
example, you may consider whether he made the statement voluntarily and understood what he
was saying. You may consider whether he was forced, threatened, or pressured, either
physically or psychologically, and whether he was promised any reward or benefit for making
the statement. You may consider all the conversations between him and the police. You may
consider whether the police warned him of his rights. You may consider where and when the
statement was given; the duration of any questioning; who was present during some or all of the
questioning of the defendant; and whether the police recorded some or all of the conversations.
You may consider the age, education, experience, intelligence and the physical and mental
condition of the defendant.

**Instruction 2.307 – MOTIVE**

Motive is not an element of the offense(s) charged, and the government is not required to prove motive in this case. You may, however, consider evidence of motive or lack of evidence of motive in deciding whether or not the government has proved the charge(s) beyond a reasonable doubt.

**Instruction 2.310 – TRANSCRIPTS OF TAPE RECORDINGS**

Recordings of conversations identified by witnesses have been received in evidence. Transcripts of these recorded conversations are being furnished for your convenience and guidance as you listen to the tapes to clarify portions of the tape which are difficult to hear and to help you identify speakers. The recordings, however, are the evidence in the case; the transcripts are not. If you notice any difference between the transcripts and the recordings, you must rely only on the recordings and not the transcripts. In addition, if you cannot determine from the recording that particular words were spoken, you must disregard the transcripts as far as those words are concerned.

**Instruction 3.101 – PROOF OF STATE OF MIND**

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by Admiral Burke, and all other facts and circumstances received in evidence which indicate his intent or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that Admiral Burke acted with the necessary state of mind.

**Instruction 3.102 – WILLFULLY CAUSING AN ACT TO BE DONE**

You may find Admiral Burke guilty of the crime charged in the indictment without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense. A defendant is responsible for an act which he willfully causes to be done if the act would be criminal if performed by him directly or by another. To "cause" an act to be done means to bring it about. You may convict Admiral Burke of the offense charged if you find that the government has proved beyond a reasonable doubt each element of the offense and that Admiral Burke willfully caused such an act to be done, with the intent to commit the crime.

**Instruction 3.103 – ON OR ABOUT**

The indictment charges that the offenses of Conspiracy and Bribery were committed at least as early as September 2020 through October 2022.  It also charges that the offense of Acts Affecting a Personal Financial Interest began at least as early as September 2020 and continued through March 2022.  It further charges that the offense of Concealment of Material Facts began at least as early as September 2020 and continued through July 2022. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged.

## CONSPIRACY – COUNT ONE, 18 U.S.C. § 371

Count One of the Indictment charges the Defendant, Robert P. Burke, with conspiracy to commit bribery. Title 18, United States Code, Section 371, makes it a crime to conspire with someone else to commit an offense made illegal by federal law. It is against the law to agree with someone to commit the crime of bribery.

The charge of conspiracy to commit bribery, is a separate charge from bribery itself with which the Defendant also is charged.

The Government is not required to prove that the objective was achieved. The elements of conspiracy, each of which the Government must prove beyond a reasonable doubt, are that:

1. Between September 2020 through October 2022, an agreement existed between two or more people to commit the crime of bribery. This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to commit bribery. It is enough that the Government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime of bribery. In a moment I will explain what bribery is. So, the first thing that must be shown is the existence of an agreement.

2. The Defendant intentionally joined in that agreement. It is not necessary to find he agreed to all the details of the crime, or that he knew the identity of all the other people the Government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person

understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the specific intent to advance or further the unlawful object of the conspiracy. Even if the Defendant was not part of the agreement at the very start, he can become a member of a conspiracy later if the Government proves that he intentionally joined the agreement. Different people may become part of the conspiracy at different times. But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the Defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. So the second thing that must be shown is that the Defendant was part of the conspiracy.

3. One of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an overt act.

<u>Overt Acts</u>

In this case, the charged overt acts are:

1. On September 23, 2020, Kim, copying Messenger, emailed the Defendant, despite having been instructed by the Navy not to. Kim asked for "insights or guidance" about a Navy contract for Next Jump. The Defendant responded that he would get back to Kim and Messenger, but never did.

2. On February 19, 2021, Kim emailed the Defendant, asking to connect for "at least an hour or so to catch up," and promoting Next Jump's training program.

3. On February 24, 2021, Kim emailed the Defendant, stating "I know you must be very busy," but requesting "an hour of your time[.]" Kim again promoted Next

Jump. The Defendant responded that an aide would schedule a meeting "in the next week or two."

4. On March 5, 2021, Kim, copying Messenger, emailed the Defendant, noting that Next Jump planned to open a new headquarters in New York City that summer, and inviting the Defendant and his spouse to visit.

5. On April 20, 2021, Kim and Messenger spoke with the Defendant via WhatsApp. Describing the call afterward, Kim stated that the Defendant "wants to work for us but we're asking for a deal first" and that while Messenger "felt slimy," Kim "was nervous but calm."

6. On May 6, 2021, the Defendant directed Juliet Beyler to find money for a future contract for Next Jump from U.S. Naval Forces Europe and Africa. The Defendant also told Kim and Messenger that Beyler was "working options and angles hard for funding our project[.]"

7. On May 10, 2021, Kim, copying Messenger, emailed the Defendant to propose a $20 million contract for Next Jump to provide workforce training for the Defendant's command– even though U.S. Naval Forces Europe and Africa had not identified a need for such training or requested that companies submit bids for such a contract.

8. On July 13, 2021, Kim, Messenger, and the Defendant agreed to meet ten days later in Washington, D.C.

9. On July 23, 2021, Kim, Messenger, the Defendant (while on duty), and Denese Canedo had lunch in Washington, D.C., paid for by Next Jump, during which Kim and Messenger proposed that:

    a.   The Defendant use his official position to steer a workforce training contract from U.S. Naval Forces Europe and Africa to Next Jump;

    b.   The Defendant remain in the Navy for approximately six months after Next Jump performed the contract and, pointing to its performance, influence senior Navy officers to award another contract to Next Jump – to train a larger portion of the Navy – before the Defendant retired; and

    c.   In exchange, offered the Defendant a job at Next Jump – at a salary of at least $500,000 per year plus stock options and other related compensation – to commence after the Defendant retired from the Navy, which the Defendant agreed to accept.

10. On November 16, 2021, the Defendant (while off duty) met with Kim and Messenger at Next Jump's headquarters in New York City. Describing the meeting afterward, Kim stated, "we're about to go full force back into business with the Navy," and the Defendant would aim to have a contract in place and signed before Christmas. Kim stated the contract would include in-person training to the Defendant's command in Naples, Italy, and Rota, Spain in early 2022.

11. On December 16, 2021, Kim, copying Messenger, emailed the Defendant, attaching a "Pricing worksheet" that listed a total price of $413,500 for Next Jump's training: $213,500 for the training, plus a $200,000 surcharge to give it in person in Italy and Spain.

12. On December 17, 2021, the Defendant ordered Beyler to provide a contract to Next Jump, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000.

13. On December 20, 2021, the Defendant emailed Kim and Messenger, stating that his staff could not implement a contract by January 10, 2022. The same day, Kim replied asking, "for the sake of speed," that the Defendant consider issuing the contract to Next Jump through Powertrain.

14. On December 21, 2021, Kim, copying Messenger, again told the Defendant that Next Jump could get the contract through OPM and Powertrain. Kim added, "we prefer to get this done as soon as possible." The same day, the Defendant replied, "We'll work with both and take the fastest route."

15. On December 27, 2021, U.S. Naval Forces Europe and Africa submitted a Military Interdepartmental Purchase Request ("MIPR") to OPM. The MIPR ordered a training program that would include applications only Next Jump provided; thus, the MIPR was actually a solesource contract. The MIPR required the training program to occur on January 10, 2022, in Naples, Italy, and Rota, Spain. The value of the MIPR was $355,135.

16. On January 5, 2022, OPM sent Powertrain a task order based on the requirements stated in the MIPR. The order included a travel allowance of $13,200.

17. Powertrain later contracted with and paid Next Jump approximately $257,000 related to this task order.

18. From January 8 to January 15, 2022, Next Jump employees, including Kim and Messenger, traveled to Naples, Italy, and Rota, Spain, and provided the "On My Mind" training to personnel under the Defendant's command pursuant to the MIPR.

19. The Defendant remained in the Navy and promoted Next Jump to senior Navy officers – while suggesting another contract for Next Jump to train a larger portion

of the Navy – without disclosing his prior employment offer from Kim and Messenger. For example:

    a.   On March 12, 2022, the Defendant emailed a Foreign Military Officer asking him to report back about the Foreign Military's efforts to contract with Next Jump because such information would advance Next Jump's efforts to market Next Jump to a wider U.S. Navy audience.

    b.   On March 14, 2022, the Defendant sent an email introducing Kim and Messenger to Admiral Daryl Caudle, a four-star Navy Admiral who oversaw training programs for Navy recruits' "pipeline schools." The Defendant promoted Next Jump's training program to Admiral Caudle.

    c.   On March 28, 2022, the Defendant forwarded an email to Caudle that contained a proposal for Next Jump to provide training to the Foreign Military. The Defendant commented that the Foreign Military's proposal had "sort of the same components I would see us using."

    d.   On May 25, 2022, the Defendant emailed a Senior Foreign Military Official, stating, "I wanted to write you a short note on Next Jump – something I know the [Foreign Military] is exploring." The Defendant promoted Next Jump's training, said that he had "put together a proposal for wider US Navy implementation," and added, "my team is standing by as your local US Navy team to help in any way as the [Foreign Military] considers a similar path."

20. The conspiracy was concealed from the Navy through misleading and false statements and material omissions. For example:

    a.   On August 26, 2021 (about one month after the defendants met in

Washington, D.C.), the Defendant sent the Secretary of the Navy a memo requesting voluntary retirement in May 2022. The Defendant also affirmed that he had "read and thoroughly examined DOD Directive 5500.07R concerning pre- and postretirement standards of conduct and employment activities," falsely implying that the Defendant had been and would continue to follow those standards.

b.  On March 28, 2022, the Defendant emailed a Navy Ethics Counselor, and falsely stated, with respect to post-Government employment, that he "had no conversations, have no intent to aim for a specific company, and most likely will not actively seek employment until after 1 July."

c.  On May 6, 2022, the Defendant emailed the Navy Ethics Counselor, falsely implying that Next Jump had just approached him to ask "if I would be interested in having post-Navy employment discussions," and falsely stating that he told Next Jump that "I could not, had some prerequisites to meet and would get back to them if/when I met those prerequisites." The Defendant disclosed that U.S. Naval Forces Europe and Africa had given Next Jump the contract discussed above, but he also falsely claimed the contract decision was through Beyler.

d.  On May 9, 2022, the Defendant signed a memorandum to the Navy's Chief of Naval Operations with the subject line "DISQUALIFICATION STATEMENT EMPLOYMENT)". The memorandum stated, "I anticipate commencing discussions related to employment with the company listed below . . . Next Jump," even though he already negotiated for and obtained a

promise of employment at Next Jump from Kim and Messenger.

    e.  On July 18, 2022, the Defendant submitted to the Office of Government Ethics in Washington, D.C., an "Executive Branch Personnel Public Financial Disclosure Report (OGE Form 278e)." In a section called "Filer's Employment Agreements and Arrangements," the Defendant stated that he had "tentatively accepted a job offer from Next Jump" and "Disqualification memo signed 9 May 22. Letter of offer received 24 May and accepted 26 May 22." The Defendant e-signed the document, "certify[ing that] the statements I have made in this form are true, complete and correct to the best of my knowledge" – even though the form did not include any information about his prior job discussions with Kim and Messenger.

21. In or about October 2022, the Defendant began employment as a "Senior Partner" at Next Jump and by January 2023 had received gross compensation of about $125,000.

    The Government need not prove that all of these overt acts were taken, but in order to find the Defendant guilty, you must all agree on at least one overt act that was done.

Existence of a Conspiracy

    A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The Government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

    In determining whether a conspiracy between two or more persons existed and whether

the Defendant was one of its members, you may consider the acts and the statements of any other members of the conspiracy as evidence against the Defendant whether done in or out of his presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

In summary, a conspiracy is a kind of partnership in crime. For any defendant to be convicted of the crime of conspiracy, the Government must prove three things beyond a reasonable doubt: first, that between September 2020 and October 2022 there was an agreement to commit bribery; second, that the Defendant intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

## COUNT THREE – BRIBERY, 18 U.S.C. § 201(b)(2)

Count Three of the Indictment charges the Defendant, Robert P. Burke, with bribery. Recall that Count Two is not relevant in this trial, as Admiral Burke is not charged in Count Two. Title 18, United States Code, Section 201(b)(2) makes it a crime to bribe a public official, or for a public official to accept a bribe. For you to find the Defendant guilty, the Government must prove each of the following beyond a reasonable doubt:

1. The Defendant, directly or indirectly demanded, sought, received, accepted, or agreed to accept any thing of value;

2. At the time, the Defendant was a public official.  The term 'public official' includes an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof; and

3. The Defendant acted corruptly, that is, he intended that, in exchange for the thing of value, he would be influenced in the performance of an official act.

Corruptly – Defined

The term "corruptly," as used in these instructions, means having an improper, wrongful motive or purpose. The motive to act corruptly is ordinarily a hope or an expectation of either prohibited financial gain or other benefit to oneself or some prohibited profit or benefit to another. A public official acts corruptly if the public official demands, seeks, receives, accepts, or agrees to accept something of value with the understanding, at least in part, that, in exchange, the public official is expected to be influenced in the performance of an official act.

<u>Official Act - Defined</u>

The term "official act" means any decision or action on any question, matter, cause, suit, proceeding, or controversy, which may at any time be pending, or which may by law be brought before any public official, in such public official's official capacity or in such official's place of trust. The Government must prove beyond a reasonable doubt that the Defendant intended to be influenced in the performance of a specific official act or acts.

In order to find the Defendant guilty of violating the bribery statute by accepting or agreeing to accept a bribe in exchange for influencing an official act, you must identify one or more specific questions, matters, causes, suits, proceedings, or controversies that involve the formal exercise of Governmental power, such as a determination before an agency. A question, matter, cause, suit, proceeding, or controversy must be something specific and focused that either was pending or might by law have been brought before any public official. In this case, the Government alleges that the question, matter, cause, suit, proceeding, or controversy is Next Jump's January 2022 contract with the United States Government.

In order to find the Defendant guilty of violating the bribery statute by accepting or agreeing to accept a bribe in exchange for influencing an official act, you must also find that in exchange for the bribe, the Defendant agreed to make a decision or take an action on the identified question, matter, cause, suit, proceeding, or controversy. A decision or action on a qualifying step for a question, matter, cause, suit, proceeding, or controversy would qualify as an official act. Action on the matter includes the Defendant using his official position to exert pressure on another official, or by advising another official to take action, knowing or intending that such advice will form the basis for an official action by another official. Setting up a meeting, hosting an event, or talking to another official, without more, does not qualify as a

decision or action on a question, matter, cause, suit, proceeding, or controversy. Simply expressing support for a matter does not qualify as a decision or action, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an official act.

You may consider all of the evidence in this case, including the nature of the transaction, in determining whether the conduct involved an official act.

Proof of Success Not Required

For the Defendant to be guilty of bribery by, directly or indirectly, demanding, seeking, receiving, accepting, and agreeing to receive and accept anything of value, the Government must prove beyond a reasonable doubt that the Defendant intended that, in exchange for a thing of value, he would be influenced in the performance of an official act. It is not necessary that the Government prove an official act actually was influenced. In addition, it is not a defense to the crime of bribery that the Defendant would have performed an official act without the payment of a bribe.

Exchange Need Not Be Explicit

The Defendant's intent to engage in the exchange of a bribe for an official act need not be explicit. Otherwise, the law's effect could be frustrated by knowing winks and nods. Rather, the Government can prove the Defendant's intent by circumstantial evidence, based on his words, conduct, acts, and all the surrounding circumstances and the rational or logical inferences that may be drawn from them.

<u>Mixed Motive Not a Defense</u>

Finally, it is not a defense to the crime of bribery that the Defendant demanded, sought, received, accepted, and agreed to receive and accept anything of value for some purpose in addition to influencing the Defendant's official act. This is so because people rarely act for a single purpose. If you find beyond a reasonable doubt that the Defendant acted with the corrupt intent to exchange a thing of value for an official act, then it makes no difference that the Defendant may also have had additional motives—such as friendship or goodwill.

## COUNT FOUR – ACTS AFFECTING A PERSONAL FINANCIAL INTEREST, 18 U.S.C. § 208(a)

Count Four of the Indictment charges the Defendant, Robert P. Burke, with using his official position to commit acts affecting a personal financial interest. Title 18, United States Code, Section 208(a) makes it a crime for a federal employee to use his official position to perform acts for his own financial benefit. For you to find the Defendant guilty, the Government must prove each of the following beyond a reasonable doubt:

1. The Defendant was an officer or employee of the executive branch of the United States Government;

2. The Defendant participated personally and substantially as a Government officer or employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise;

3. That the Defendant did so in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter;

4. In which the Defendant knew he, or any person or organization with whom the Defendant was negotiating or had any arrangement concerning prospective employment had, a financial interest in that matter; and

5. That the Defendant did so willfully

Personally and Substantially – Defined

To participate "personally" means to participate directly. It includes the direct and active supervision of the participation of a subordinate in the matter.

To participate "substantially" means that the employee's involvement is of significance to the matter. Participation may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to the matter, but also on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participating in a critical step may be substantial.

Willfulness - Defined

A Defendant acts "willfully" if he acts with knowledge that his conduct was unlawful.

Executive Branch

The United States Department of the Navy is part of the executive branch of the United States Government.

## COUNT FIVE – SCHEME TO FALSIFY OR CONCEAL MATERIAL FACT, 18 U.S.C. § 1001(a)(1)

Title 18, United States Code, Section 1001(a)(1), makes it a crime to scheme to falsify and conceal material facts. For you to find the Defendant guilty, the Government must prove each of the following beyond a reasonable doubt:

1. The Defendant concealed, or covered up a fact for which there was a legal duty to disclose;

2. The fact was material;

3. The Defendant falsified, concealed or covered up the fact by using a trick, scheme, or device;

4. The Defendant acted knowingly and willfully; and

5. The Defendant falsified, concealed, or covered up a material fact within the jurisdiction of the executive branch of the United States Government.

With respect to the first element, a person has a legal duty to disclose information responsive to questions posed by the United States Government when required by a statute, regulation, or government form.

A person does not violate a duty to disclose by failing to offer information that was not called for or for merely remaining silent. But if a person chooses to respond to a specific question or inquiry from the United States government relevant to a governmental matter, he has

a legal duty to be truthful in his response and to not omit facts that leave his answers false or misleading.

With respect to the second element, a fact is "material" if it has the natural tendency to influence or is capable of influencing a decision of the agency or decision-making body to which it was addressed—in this case, the Department of the Navy, which is part of the executive branch of the United States Government. The Government is not required to prove, however, that the statement actually influenced the actions of the Department of the Navy.

With respect to the third element, a "scheme, trick, or device" is any deliberate plan or course of action designed to deceive others by preventing or delaying the discovery of information. To prove the defendant used a scheme, trick, or device, the Government must show that the Defendant engaged in an affirmative act to conceal the material fact or facts.

With respect to the fourth element, a Defendant acts "knowingly" if he acts knowing that a statement is false, fictitious, fraudulent, or misleading. To prove that the Defendant acted "willfully," the Government must prove that the Defendant acted with the knowledge that his conduct was unlawful.

With respect to the fifth element, a matter is "within the jurisdiction of the executive branch of the government of the United States" if the Department of the Navy has the power to exercise authority in that matter.

**Instruction 2.402 – MULTIPLE COUNTS: ONE DEFENDANT**

Each count of the indictment charges a separate offense. You should consider each offense, and the evidence which applies to it, separately, and you should not return separate verdicts as to each count unless I instruct you to do otherwise. The fact that you may find the defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment.

**Instruction 2.405 – UNANIMITY**

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict.  In other words, your verdict on each count must be unanimous.

**Instruction 2.407 – VERDICT FORM EXPLANATION**

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be. Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

**Instruction 2.500 – REDACTED EXHIBITS**

During the course of this trial, a number of exhibits were admitted in evidence. Sometimes only portions of an exhibit were admitted, such as portions of a longer video, a document with some words or pictures blacked out or otherwise removed, or a video played without audio.  There are a variety of reasons why only a portion of an exhibit is admitted, including that the other portions are inadmissible or implicate an individual's privacy.  As you examine the exhibits, and you see or hear portions where there appear to be omissions, you should consider only the portions that were admitted.  You should not guess as to what has been taken out or why, and you should not hold it against either party.  You are to decide the facts only from the evidence that is before you.

**Instruction 2.501 – EXHIBITS DURING DELIBERATIONS**

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdicts. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

**Instruction 2.502 – SELECTION OF FOREPERSON**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

**Instruction 2.505 – POSSIBLE PUNISHMENT NOT RELEVANT**

The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

**Instruction 2.508 – CAUTIONARY INSTRUCTION ON PUBLICLITY, COMMUNICATION, AND RESEARCH**

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

**Instruction 2.509 – COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person—not the clerk, the marshal or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion—whether the vote is for conviction or acquittal or on any other issue in the case.

**Instruction 2.510 – ATTITUDE AND CONDUCT OF JURORS IN DELIBERATIONS**

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

**Instruction 2.11 – EXCUSING ALTERNATE JURORS**

Now I must excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it's nothing personal. We selected two seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse those jurors in seat 6.

Before you two leave, I am going to ask you to tear out a page from your notebook, and to write down your name and daytime phone number and hand this to the clerk. I do this because it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet. In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you very much for your service, and please report back to the jury office to turn in your badge on your way out.